KIRK HAWES *et al.*

*v.*

ALLIE M. FAVOR.

440:82 Fed 86;
39 LRA 71{

*Filed at Ottawa May 12, 1896.*

1. HUSBAND AND WIFE —*when coverture does not bar wife from demand-
ing specific performance.* The validity of a clause of an agreement for
the lease of property to a married woman, made in April, 1874, giv-
ing her the right to purchase at the expiration of the lease, cannot
be contested on the ground of her disability, where she has paid all
the rents, taxes and special assessments according to the contract,
and tenders the price named, and where, from the whole contract,
it appears a purchase and sale were contemplated by the parties.

2. LANDLORD AND TENANT—*what is not a violation of covenant against
removal of building and for repairs.* A covenant in a lease for ninety-
five years, that any buildings upon the premises shall in no case be
removed therefrom and shall be kept in repair, is not broken by an
alteration and improvement of the building so as to give largely
increased security to the lessor.

3. SAME—*construction of covenant that house shall front on certain street.* A covenant in a lease that any house upon the premises, or that may be placed thereon, shall at all times front upon a certain park, is not broken by the construction of an addition to the building, fronting upon a side street, so as to give two fronts.

4. SAME—*construction of covenant as to location of building upon leased premises.* A covenant in a lease that any building erected upon the premises shall be set back twenty feet from a certain line is not broken by the erection of an open porch nearer such line.

5. SAME—*covenant limiting use of property construed in favor of lessee.* A covenant in the nature of a restriction or limitation upon the use of property leased will not be enlarged by construction, and any doubt arising will be resolved in favor of the lessee.

· 6. ESTOPPEL—*permitting tenant to make improvements without objection.* A landlord who allows his tenant to expend large sums of money in valuable and lasting improvements, without objection or inquiry as to her intent in respect to violation of covenants, is estopped to assert a forfeiture of the lease because of such improvements, where no substantial damage results from the alteration.

APPEAL from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Prior to the 23d day of April, 1874, John H. Dunham subdivided into city lots the south 661 feet of the southwest quarter of the north-east quarter of section 11, township 38, north, range 14, east, in Cook county. This subdivision was laid out with a street on the south, named Fifty-first street, 33 feet wide, and a street on the west, named Madison avenue, also 33 feet wide. Abutting on Fifty-first street is a tier of lots extending north 145 feet, and fronting on a private park named "Madison Avenue Park," 139 feet wide and extending east and west through the subdivision. The lots are each 25 feet front. Number 100 borders on Madison avenue and adjoins 101 on the east. This subdivision was laid out with a view to making it desirable residence property, the park being dedicated to the use of owners of lots fronting thereon. After making the subdivision Dunham himself erected several residences fronting on the park, one of which was on lots 100 and 101. These houses were built 20 feet

back from the park line. On the date above named Dunham made a contract with appellee, by which he leased to her these lots for a term of ninety-five years, at a certain rental, payable semi-annually, she agreeing to pay all taxes and special assessments levied upon the property, to build a house thereon to cost not less than $4000, within a certain time, and to perform certain covenants named in the contract in regard to the house so to be built. Afterwards, it is stated in the lease, she purchased of Dunham the dwelling house then on the lots, which was accepted in lieu of the house to be erected thereon by the lessee, subject to the same conditions. The contract also provided for a forfeiture of the lease upon a failure of the lessee to comply with the terms and conditions of the contract on her part, and then follows this clause:

"And it is further covenanted and agreed by and between the said parties of the first part, his heirs and assigns, that at the expiration of the period of ten years from the date of this lease, viz., on the 23d day of April, in the year of our Lord one thousand eight hundred and eighty-four, (provided the said party of the second part, her heirs, executors, administrators and assigns shall have faithfully kept and performed every and all the covenants and agreements in this lease contained, by them to be performed and kept,) the said party of the second part, her legal representatives or assigns, shall have the privilege of purchasing the premises herein demised and described, together with all the buildings that may be thereon, by paying in cash to the said party of the first part, or to his legal representatives, the sum of four thousand ($4000) dollars; and the said party of the first part, for himself, his heirs, executors, administrators and assigns, hereby covenants, on the payment of said sum of money at the time specified, to convey to the said party of the second part, her legal representatives, heirs or assigns, said demised premises, with all the buildings

and appurtenances, by a good and sufficient deed, containing covenants of warranty against the claims of all persons except the said party of the second part, and those claiming by, through or under her. And in case the said party of the second part, her heirs or assigns, shall not elect to purchase said premises at the time and on the day hereinbefore stated, then at the end of any five years thereafter, during the whole term for which this lease is given, the said party of the second part, her heirs or assigns, shall have the right to purchase said premises, by paying to the said party of the first part, or to his legal representatives, the sum of four thousand dollars ($4000), provided all the covenants and agreements in this lease contained shall have been faithfully performed and kept by the said second party, her heirs, executors, administrators and assigns, up to the time of making said purchase; and provided further, that the party of the second part shall, ninety (90) days before the expiration of the said period of five years, in writing, notify the said first party, or his legal representatives, of his election to make said purchase at the time specified. It being the understanding and meaning of this covenant that the said party of the second part shall have the right to purchase said premises, on the terms and conditions stated, at the expiration of the period of ten years from the date of this lease, viz., on the 23d day of April, A. D. 1884, and if such election shall not at that time be made, then at the expiration of every five years thereafter during the continuance of the term, and at no other time."

In April, 1893, John H. Dunham died, and by his last will and testament appellants became the owners of the premises, subject to said contract. On the 12th day of June, 1894, appellee filed this bill to compel a conveyance of the property to her under the foregoing provision of the lease, alleging a compliance with all the covenants to be performed by her, the giving of the required

notice of her intention to purchase, the tender of the $4000 to be paid by her, and the refusal of appellants to convey. The defendants answered the bill, denying the validity of the contract, and denying that the complainant had performed the covenants therein made by her, and alleging that by reason thereof the contract had become forfeited. They also filed a cross-bill, asking that the lease be declared forfeited and they put in possession of the premises. Answer to this cross-bill, and a replication to both it and the answer to the original bill, being filed, a hearing was had on evidence taken in open court, and a decree entered granting the relief prayed in the original bill and dismissing the cross-bill for want of equity. From that decree this appeal is prosecuted.

Other facts material to the decision of the case are stated in the following opinion.

KIRK HAWES, and EDWARD E. PERLEY, for appellants:

Equity will not decree a specific performance of a contract on which an action at law will not lie. 22 Am. & Eng. Ency. of Law, 931, note.

Equity will not create a right of action while none exists at law. *Day* v. *Hunt*, 112 N. Y. 191.

Courts of equity have no more jurisdiction than courts of law to vary the express agreements between the parties, and the rule is that the same construction is to be followed in equity as at law. Batten on Contracts, 175.

The enabling act of 1874 did not take effect for more than two months after the lease was signed, and neither the act of 1861 nor of 1869 conferred power upon appellee to make such a contract. It was not until the act of 1874 took effect that a married woman in this State had any power to execute a binding, valid contract concerning real estate, save as to matters growing out of her right to hold and enjoy her own separate estate. *Carpenter* v. *Mitchell*, 50 Ill. 470; *Bressler* v. *Kent*, 61 id. 426; *Lewis* v.

*Groves,* 84 id. 205; *Warner* v. *Crosby,* 89 id. 320; *Patterson* v. *Lawrence,* 90 id. 174; *Hogan* v. *Hogan,* 89 id. 427.

A subsequent promise by a *feme covert* to perform her invalid contract is without consideration. Stewart on Husband and Wife, sec. 368.

The element of reciprocity or mutuality is absent. *Robinson* v. *Robinson,* 74 Ky. 174.

The deed being void, its record was not notice to any one of any possible equity. *Murry* v. *Emmons,* 19 N. H. 483; *Warren* v. *Costello,* 109 Mo. 338.

ALEXANDER S. BRADLEY, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The principal ground upon which a reversal is insisted upon is, that appellee failed to show that she had performed her covenants in the lease in regard to the building. After urging this ground, however, the proposition is asserted that the clause giving appellee the right to purchase the property is void, because at the time it was entered into appellee was a married woman. If this position be tenable all other questions raised upon the record are of no importance, and it will therefore be first disposed of.

We are at a loss to perceive upon what principle of equity it can be seriously contended that John H. Dunham or his heirs can now be heard to assert that the contract is not enforcible because of the disability of Mrs. Favor in 1874. It is not claimed that during the period from the making of the contract to the filing of her bill she did not pay, or offer to pay, all the rents accruing under the lease, together with the taxes and special assessments levied upon the property, according to the terms and conditions of the contract. When this contract is considered as a whole, it clearly appears that a sale and purchase of the property were contemplated by the parties, if, indeed, it was not the controlling consideration for its execution. It was not, therefore, a

mere executory contract for the purchase of real estate by a married woman, and we see no reason why her contract was not a valid one under the act of 1861, as construed in *Carpenter* v. *Mitchell*, 54 Ill. 126. The clause, however, upon which the original bill is based, is in the nature of a continuing offer on the part of Dunham to sell, extending through the period covered by the lease. The acceptance of that offer by giving the required notice and offering to pay the $4000 named, entitled appellee to an enforcement of the contract if she had in other respects kept her covenants. *Hayes* v. *O'Brien*, 149 Ill. 403, and cases cited.

Recurring now to the real defense to the original bill, the acts which are claimed to be such violations of the covenants as will defeat the right to the relief prayed are, first, the "pulling down and destroying the dwelling house on these lots, without the consent of her lessor;" second, fronting the house she erected in place of the original, on Fifty-first street, instead of on the park; third, extending the new structure across the established building line to the border of the park.

The first of these alleged breaches is based upon the covenant that the dwelling house on the lot should be taken and held "as part and parcel of the realty and in no case to be removed therefrom, it being expressly understood and agreed that the said building herein covenanted to be built by the said party of the second part on said demised premises, and also any other building that may be erected thereon, of every nature and kind, shall be deemed, taken and held to be permanent improvements and part and parcel of the realty, and shall in no case be removed therefrom;" also that the lessee should keep the premises in good repair during the term, and keep the same insured for the benefit of the lessor. The second and third alleged violations of her covenants are based upon the language, "it is further covenanted and agreed that any house now on said lot, or that may

hereafter be placed thereon, shall at all times front on said park, and set back from the south line of said park twenty feet."

It appears from the evidence that the building on the lots at the date of the contract fronted on the park and was twenty feet from its south line. Commencing in August, 1892, appellee erected a three-story building on the lots, extending south to Fifty-first street and connected with the old building, which was substantially made new upon the same foundation, and two stories high from the basement instead of one and a half, as at first built. This new structure was shown to have cost from $8000 to $15,000.

It is insisted by appellants that under the covenant that any building on the premises, then or thereafter erected, should be a part of the realty and a permanent improvement, and be *in no case removed therefrom*, and be kept in repair, etc., the lessee was bound to keep and maintain the building just as she found it when the lease was made. In construing these covenants, as in the construction of every contract, the circumstances and conditions surrounding the parties and property must be taken into consideration. The manifest object of the parties in putting these covenants in the lease was to protect the lessor against loss resulting from permitting the property to go into decay or to be removed from the premises. It can scarcely be seriously contended that it was expected that a building of the description of the one on the lots in 1874 should be maintained during the whole period of ninety-five years. In fact, the evidence shows that at the time the improvements were made thereon they were necessary to prevent its becoming unsafe as a residence and falling into decay. That injury or danger of loss to the lessor was occasioned by the change is not pretended. More than double the security which the lessor had in the old building was furnished by the improvements made on it. There was no viola-

tion of the covenant in the lease by "pulling down" or destroying or removing the house.

Whether the covenant to front buildings on the park was violated by erecting the new structure presents a question of fact upon which the evidence is conflicting. Counsel for appellants insist that certain photographs of the building offered in evidence clearly show that it fronts on Fifty-first street, and not on the park. It may be, if one were called upon to determine, from the mere exterior of the building, which would more properly appear to be the front, the contention would be correct. Evidently, from these photographs and the testimony of the various witnesses, it was intended that the house should have the external appearance of fronting both on the street and the park; but a majority of the witnesses who were acquainted with the interior of it as well as the exterior, state that it fronts on the park, and among them is the architect who designed it. It certainly can not be said, from the evidence in this case, that it does not front on the park, and, in our view of the proper and legal construction of the covenant claimed to have been violated, it is immaterial whether it also fronted on Fifty-first street or not. Whether the building as it now stands is in good taste, makes an attractive appearance, or otherwise, is also immaterial, unless it could be said that such a result arose from an attempt, on the part of appellee, to evade the spirit of her covenants as to fronting the house on the park,—and of this there is no evidence. It is certainly desirable that a building located as this is, extending near both the street and the park, shall be so constructed as to present an attractive appearance from either direction. If this house had been reversed, and the three-story part put on the north and the two-story part on the south, finished just as it is, it might have been said, with the same propriety as now, that it fronted on Fifty-first street instead of the park. The covenant in the lease is not that a building of any

particular style of architecture shall be built on the lot, attractive in appearance, etc., but simply that it shall. front in a particular direction. We do not think, under the evidence in this case, it was violated.

But it is said this covenant not only required any building erected on the lots to front on the park, but also that it should set back twenty feet from the south line, whereas the evidence shows that the structure in question extends across that line some eleven feet, the steps extending down to the park line. This contention is based upon the fact that an open porch extends over the line, and not that the building itself does so. Unless it can be said that this porch is a part of the building, within the meaning of the covenant, there was no breach of it. Appellants maintain that it is such a part of the building, and cite several authorities to the effect that bay windows and like projections are a part of the house, within the meaning of such restrictions. On the other hand, counsel for appellee cites *Graham* v. *Hite*, 93 Ky. 474, which seems to support the contrary contention. The condition is in the nature of a restriction or limitation upon the use of the property, and will not be enlarged by construction. If there is any doubt as to whether the porch is within its terms, that doubt must be resolved in favor of the lessee. (*Eckhart* v. *Irons*, 128 Ill. 568.) This rule is especially applicable to this case, since forfeitures are never favored in law nor enforced where injustice will result, if the language used will reasonably bear a construction leading to a different result.

It appears that in October, 1892, after the improvements and additions made upon the building, Dunham served a notice upon appellee of a forfeiture of her lease for the violation of her covenants, demanding possession of the premises, and thereafter commenced his action of forcible entry and detainer to recover the same. Counsel insist that by this act an end was put to the lease, and no further rights existed in appellee under it. What we

161—29

have already said disposes of this contention. There being no breach of the covenant, of course no right of forfeiture accrued. Moreover, we think the conduct of Dunham during the progress of this work amounted to a waiver of his right to declare a forfeiture. The evidence shows that the building which is now said to front on Fifty-first street was erected in the month of August, 1892, and the repairs were commenced on the old part of the building early in October. It further shows that from the time the work of making these changes was begun he was apprised of the fact that they were about to be made, and manifested an uneasiness or dissatisfaction with reference thereto. He was himself very frequently there, or past the premises, during the progress of the work. He had an agent living near by, who testifies that it was his duty to, and that he did, keep watch as to what was being done on the premises, and made inquiry of workmen engaged there, though he says he failed to learn from them what the purpose of appellee was. Dunham consulted attorneys about bringing injunction proceedings against her, but it is claimed he was advised not to do so because of the uncertainty then existing as to what was intended to be done. During this time, as we have seen, appellee was expending large sums of money in placing valuable and lasting improvements upon the lots, and this fact must have been known to Dunham; yet there is an entire absence of proof that in his efforts to ascertain what her intentions were he ever spoke to her in regard to the matter or made the slightest objection to what she was doing. It would certainly be inequitable to allow appellants claiming under him to now insist upon a forfeiture of the contract for these acts. It does not appear that any owner of property in the vicinity or subdivision objects to the projection of the porch across the building line, nor is there any claim that substantial damages have or will result therefrom to appellants.

It is said in the argument that the question here is not one of forfeiture, but whether the complainant is entitled to enforce the contract without herself having complied with its terms. There is, however, no escaping the alternative that she is either entitled to the relief prayed in her bill or the appellants are entitled to what they ask in their cross-bill—which is a forfeiture of the contract.

Other objections urged to the decree below are, in our opinion, without force. On the whole record, we think substantial justice has been done between the parties by the decree of the Superior Court, and it will be affirmed.

*Decree affirmed.*