MID-CONTINENT PETROLEUM
CORP. v. DONELSON.

No. 29181.   June 10, 1941.

Rehearing Denied Sept. 9, 1941.

*116 P. 2d 721.*

J. C. Denton, R. H. Wills, J. H. Crocker, I. L. Lockewitz, and J. P. Greve, all of Tulsa, for plaintiff in error.

Hamilton & Kane, of Pawhuska, for defendant in error.

DAVISON, J.   Plaintiff in error and defendant in error are the oil and gas mining lessee and the owner, respectively, of land originally allotted to an Osage Indian.

This action was commenced by the owner, as plaintiff, to recover damages against the lessee, as defendant, in April, 1938. It was based upon three separate alleged causes of action. For the first of these plaintiff alleged that he had been damaged in the sum of $500, the reasonable value of a house that the defendant had removed from the premises without his permission. As a second cause of action it was alleged that plaintiff had been damaged in the sum of $200, the agricultural and grazing value of a strip of land through the center of the tract that defendant had appropriated by grading and oiling a road thereon. In plaintiff's third alleged cause of action he claims to have been damaged in the sum of $400, the value of other portions of his land occupied by four houses in which tenants of the defendant lived, as well as other portions used by said tenants for gardens and pastures.

At the beginning of the trial, the court sustained the defendant's objection to the introduction of any evidence on the first of the plaintiff's alleged causes of action; and after a trial by jury on the other two, overruled the defendant's motions for a directed verdict and entered judgment in accord with a verdict of $100 in favor of the plaintiff.

The defendant has lodged the present appeal, but plaintiff has filed a cross-petition in error in which he complains of the trial court's ruling on the introduction of evidence concerning his first alleged cause of action.

In further discussing the matters pertinent to our decision herein, the parties will be referred to as they appeared in the trial court.

Most of the argument advanced in the briefs concerns the trial court's alleged error in overruling the defendant's separate motions for a directed verdict as to plaintiff's second and third causes of action. Under two of the propositions advanced by the defendant on this point, it is contended that the evidence plainly shows that the road and houses in question were built on the land be-

fore plaintiff acquired it, and that the damages the latter sought to recover for the land occupied thereby accrued to the latter's grantor, rather than to him.

The undisputed evidence disclosed that the road was originally built to provide a way of ingress and egress for land under lease by the Empire Oil Company which was situated in the vicinity of the land in question, and that employees, graders, machinery, and equipment of the county had been used to maintain the road since 1922 or 1923. The plaintiff acquired title to the land involved in May, 1936, and in the same month the defendant company's employees oiled said road. Plaintiff testified in support of his claim that the land was "worth $200 less with the road running through than if it were not there," and that it would be eight or ten years before the road, as graded and oiled, would again grow grass. Mr. H. F. Lesch, one of the defendant company's employees, testified without contradiction that in 1929, several years before plaintiff became owner of the tract, the road had larger quantities of oil on it than it did at the time he testified. The foregoing clearly demonstrates that plaintiff has no cause of action against the defendant for the construction of the road, and there was no evidence introduced tending to show that the defendant company had anything to do with its grading and maintenance, except as above described. It is argued on behalf of the plaintiff that the trial court was warranted in submitting to the jury the question of his damages from the road on the theory that he was seeking temporary damages for the use of the land occupied thereby and because of certain evidence showing not only how many acres the road occupied, but also the value of the use of such acreage per year. This argument is untenable, however, for the evidence fails to show that the defendant company did anything to deprive plaintiff of the use of said land. The evidence does tend to show, however, that the land covered thereby was rendered unavailable for use as grazing or farm land by the construction of the road long before plaintiff's purchase, and it is but reasonable to assume that this fact was taken into consideration at the time the purchase price for the tract, as a whole, was agreed upon between plaintiff and his grantor. The evidence does not show how much, if any, this condition was affected by the oil which defendant's employees administered to the road bed in 1936, or to what extent, if any, this injured the tract more than it had already been injured or damaged by the road's construction and previous oiling. Thus it is obvious that the trial court should have sustained the defendant's motion for a directed verdict as to plaintiff's second alleged cause of action.

One of the same factors which should have precluded the plaintiff's second alleged cause of action from being submitted to the jury for consideration also exists in the evidence concerning a portion of the subject of his third alleged cause of action, namely, the use of the land occupied by the four houses hereinbefore mentioned. The undisputed evidence shows that the houses were located upon the same land they occupied at the time of the trial, before plaintiff ever purchased the tract in question. The land they occupied was thus rendered unavailable for grazing and agricultural purposes before plaintiff's purchase. Whether the injury to the landowner from being deprived of the use of the land on which the houses stood be regarded as having been complete at the time of their erection and as giving only the party who owned the land at that time a cause of action therefor, or whether it be regarded as an injury to any subsequent owner who was deprived of the use of said land while the houses stood, it is clear that under the undisputed evidence in this record the alleged tort in question constitutes no basis for a cause of action by this plaintiff against this defendant. The evidence wholly fails to show that the defendant had anything to do with the erection of the houses. The defendant alleged that they were erected by its assignor and, as we have noted, the undisputed evidence shows that they

were erected before it appears that the defendant acquired any interest in the lease. The land on which the houses stood was unavailable to the landowner for grazing or cultivation, as long as they stood, whether they were occupied or unoccupied. In view of the foregoing it is manifest that plaintiff's alleged damages from being deprived of the use of said land were not a proper subject for consideration by the jury in arriving at its verdict.

As to the damages which plaintiff sought to recover from the defendant company for the use by its employees of other portions of the tract for gardens and pastures, the evidence is insufficient to establish liability on the part of said company therefor. Counsel for the plaintiff contend that the rule of respondeat superior, requiring an employer to respond in damages for torts committed by his employees within the scope of their employment, casts no doubt upon the correctness of the judgment herein, for the asserted reason that the evidence shows the defendant company was causing its employees to supplement insufficient salaries it was paying them by gardening and pasturing cattle. There is no evidence in the record to support this assertion. It was not shown how much those salaries were, nor that they were insufficient to furnish said employees with ample livelihoods, though one of them testified that he supplemented his income by selling some of the milk from the cows he kept on the land. Another employee testified that the company took $2 out of his monthly check for rent on the house in which he lived, and another testified that he "supposed" the officers of the defendant company knew that its employees were keeping livestock on and gardening a portion of the land. If the latter testimony be regarded as a sufficient basis for the inference that the defendant company knew its employees were using portions of plaintiff's land for gardening and pasturing purposes, and it were concluded that since said company did not forbid such activities, it acquiesced therein, still the liability of a principal

or master in these independent enterprises of its employees would not attach to the defendant. The testimony of its employees that said company had not authorized the gardening and pasturing was uncontradicted. The general rule is that a master is not liable for acts of his servants not within the scope of their employment, and not directed or ratified by him. Restatement of The Law, Agency, vol. 1, sec. 219; 39 C. J. 1305, sec. 1505. And it cannot be concluded that acts, not within the scope of a servant's employment, nor performed for his master's benefit, were authorized, directed, or ratified by the master, solely on the basis of evidence tending to show that the latter knew of or acquiesced in said acts. Gardening and pasturing cattle are not ordinarily within the scope of employment of men engaged in oil and gas mining operations as were the defendant's employees, and there is no evidence tending to place them within the scope of such employment in this case. Nor was it shown that the company derived any benefit from such activities, or that they were, or were ever intended to be, anything but independent enterprises of certain of its employees. The fact that they were in the employment and pay of the defendant did not make the latter responsible for all their wrongful or negligent acts. See Fairmont Creamery Co. of Lawton v. Carsten, 175 Okla. 592, 55 P. 2d 757, 760. In Ireton v. Atchison, T. & S. F. Ry. Co., 96 Kan. 480, 152 P. 625, 1917F, L. R. A. 1120, the plaintiff's action was for damages caused by the spread of fires started by the defendant railroad company's employees. For all that appeared from the evidence, the fires were maintained by said employees for cooking, washing, and similar private or domestic purposes. The theory of the trial court in that case was that the defendant's knowledge of and consent to the maintenance of such fires rendered it liable for the damages involved therein just as in this case the plaintiff seems to be of the opinion that the testimony concerning the defendant's asserted knowledge that its employees were using plaintiff's land for gardening and pas-

turing cattle was sufficient to warrant submission. to the jury of the question of said company's liability for plaintiff's damages therefrom. In that case, however, the court made it plain that such a theory is untenable, as the fires were not maintained for the benefit of the defendant in the conduct of the work which the employees were hired to do, and made the following pertinent observations:

". . . The defendant's laborers were employed to lay steel, distribute ballast, and surface track. When they were not doing this, they were not working for the defendant, and the defendant was not their superior. Their camp fires were no more factors of this work than they would have been if they had been maintained for domestic purposes of the laborers elsewhere. . . ."

See, also, Mason v. Nibel, 129 Okla. 7, 263 P. 121; Ada-Konawa Bridge Co. v. Cargo, 163 Okla. 122, 21 P. 2d 1; Kelly v. Louisiana Oil Refining Co., 167 Tenn. 101, 66 S. W. 2d 997, and as to the doctrine of respondeat superior generally, see Elkhorn Piney Coal Mining Co. v. Hazelett, 62 F. 2d 137; Star Restaurant v. Metropolitan Life Ins. Co., 105 Vt. 77, 163 Atl. 558; Morier v. St. Paul, M. & M. Ry. Co., 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793. Under the principles enunciated in the foregoing cases and adhered to in this and other jurisdictions, the evidence in the present case was wholly insufficient to establish legal responsibility upon the defendant for the acts of its employees in using portions of the plaintiff's land for making their gardens and pasturing their cattle. Having reached a similar conclusion with reference to all of the items of so-called damages which plaintiff alleged in his third cause of action, we hold that the trial court erred in overruling the defendant's motion for a directed verdict as to same. As we have concluded upon the basis of the evidence that no recovery by the plaintiff upon either his second or third causes of action can be sustained against the defendant, it is unnecessary to discuss other grounds advanced by the defendant for arriving at the same conclusion, since none of them would necessarily

preclude plaintiff upon a new trial of the action from establishing the liability of the defendant for all of the items of damage claimed under said alleged causes of action (see 3 Am. Jur. 707, par. 1204, note 11). Consequently, we now address ourselves to the subject of plaintiff's cross-appeal.

In urging that the trial court erred in sustaining the defendant's objection to the introduction of evidence in support of his first alleged cause of action, plaintiff argues that defendant's removal of the house therein complained of was in violation of section 5 of the oil and gas leases covering said land. The material portions of said provision are as follows:

"The lessee shall . . . commit no waste and. suffer none to be committed upon the land, . . .

"All buildings and permanent improvements, including casings of all producing wells drilled three years or more prior to the expiration of the lease, shall remain a part of said land and become the property of the surface owner at expiration of the lease, . . ."

The theory of the defendant is that under the quoted portion of the leases, plaintiff had no interest in or title to the house in question until the expiration of said leases, and therefore no right to complain of its removal until that time. Apparently this was the ground upon which the trial court sustained defendant's objection to the introduction of evidence concerning said removal, holding specifically that plaintiff's alleged cause of action therefor was "prematurely brought. . . ."

Plaintiff maintains that under section 5, supra, the house in question became a part of his reversion immediately upon its erection and that, consequently, even though the leases have not expired, the defendant committed waste in removing same from the leased premises. In support of this contention, his counsel cite Bass v. Metropolitan West Side Electric Railway Co., 82 Fed. 857; Roanoke Marble & Granite Company v. Standard Gas & Oil Company, 155 Va. 249, 154 S. E. 518; as well as the

general statement set forth in 26 C. J. 717, par. 106, to the effect that when it is stipulated that articles or structures, ordinarily removable by the tenant, shall belong to the landlord on the expiration of the term, the landlord acquires a vested interest in them immediately upon annexation. It is unnecessary to distinguish the cited cases from the case at bar. Neither are controlling in this jurisdiction. A much more specific and unequivocal guide to the true meaning and effect of the exact words used in section 5, supra, is contained in Central Coal & Lumber Co. v. Board of Equalization of Le Flore County, 70 Okla. 131, 173 P. 442. In that case the plaintiff contended that houses erected on land belonging to the Choctaw and Chickasaw Tribes and leased for coal mining purposes by the Choctaw Coal & Mining Company were not taxable on the ground that they belonged to said Indian Tribes under the following provisions of said lease:

"And not to remove therefrom any buildings or improvements erected thereon during said term by the Choctaw Coal & Mining Company, the party of the second part, but said buildings and improvements *shall remain a part of said land and become the property of the* owner of the land as a part of the consideration for this lease, in addition to the other considerations herein specified." (Emphasis ours.)

Without referring to any other provision of the lease, this court answered plaintiff's contention in the following words:

"We believe that this lease, properly construed, means that the houses do not become the property of the owners of the land until after the expiration of the lease and all of the rights of the lessee under it cease."

To the same effect is Commissioner of Internal Revenue v. Hills Corporation, 115 F. 2d 322, wherein the Circuit Court of Appeals of this circuit, in speaking of a lease providing that at the expiration thereof the improvements on the leased property "shall become the property" of the lessor or landlord, said:

". . . Here, the parties to the lease stipulated that the building erected by the tenant should become the property of the landlord at the termination of the lease *and thereby, in effect, stipulated that it should remain the property of the tenant until that time. . . .*" (Emphasis ours.)

See, also, Estate Property Corporation v. Hudson Coal Co., 249 N. Y. S. 418, aff., 261 N. Y. S. 978.

In accord with the foregoing authorities, we conclude that section 5 of the oil and gas leases involved herein affords plaintiff no basis for a cause of action for the value of the house allegedly removed from the leased premises, and that the trial court correctly sustained defendant's objection to the introduction of evidence in support of plaintiff's first alleged cause of action.

The judgment of the trial court with reference to plaintiff's other two alleged causes of action is hereby reversed and said cause remanded to the trial court for further proceedings not inconsistent with the views herein expressed.

CORN, V. C. J., and RILEY, GIBSON, and HURST, JJ., concur.