## AMERICAN RAILWAY EXPRESS COMPANY v. CITY OF CHATTANOOGA.

Eastern Section. June 15, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

Allison, Lynch & Phillips, of Chattanooga, for plaintiff in error.

B. E. Tatum & J. W. Anderson, of Chattanooga, for defendant in error.

OWEN, J. The American Railway Express Company, plaintiff below, has appealed from a judgment rendered in the circuit court of Hamilton county dismissing its suit. Plaintiff sued to recover the value of a building erected by the plaintiff on property belonging to the State of Georgia and leased to the Nashville, Chattanooga and St. Louis Railway.

Plaintiff alleges in its declaration that it was the owner of a warehouse which was located on a strip of land which the city had condemned to be used as a part of the extension of Broad street; that on or about May 7, 1926, the defendant through its servants and agents—without having condemned plaintiff's property—entered upon the premises used and occupied by it, tore down and demolished and removed its warehouse, which was of the reasonable value of $10,000.

To this declaration the defendant filed in addition to a plea of not guilty and a plea that plaintiff's right of action was barred by the statute of limitations, a special plea averring in substance that the plaintiff was not the owner of the property described in its declaration, but that the same was owned by the State of Georgia, and that it had condemned and paid the owner for said property.

To this special plea plaintiff filed a replication, in which it averred in substance that it was true that defendant had undertook to condemn the land on which its warehouse was located, but denied that defendant condemned or undertook to condemn the right, title and interest of its warehouse building upon said land, and that the defendant could easily have ascertained the nature and extent of its rights but neglected to do so, and proceeded against the owner of the land without making it a party to the condemnation proceedings.

The defendant for rejoinder to plaintiff's replication averred, in substance, that plaintiff had no right, title or interest in said property which it could condemn; that plaintiff was holding said property at will of the lessee, N. C. & St. L. Railway, and had no lease on same, and that by the terms of the contract between the owner and lessee the building involved was at the time of said condemnation the property of the State of Georgia, and was condemned and paid for by the defendant.

The cause was submitted to the trial judge without the intervention of a jury and at the conclusion of all the evidence and the argument of counsel the court dismissed plaintiff's suit. At the outset of the trial below, counsel for the defendant stated to the court:

"There is a kind of general understanding that this trial will evidently be very informal. It is the understanding that each party can read anything from the Declaration of Independence down to the last world's almanac."

To which statement counsel for plaintiff replied:

"Subject of course to competency."

The plaintiff filed a motion for a new trial containing one ground which was overruled, prayed, perfected an appeal to this court and has assigned one error, being the ground stated in its motion for a new trial, said assignment is as follows:

The trial court erred in rendering judgment against the plaintiff and in favor of the defendant because the undisputed proof introduced at the hearing of this cause showed that the property of the plaintiff, for whose value this suit was filed, had been taken by the defendant without the payment of any compensation therefor and without resort to any proceedings authorized by law against this plaintiff. Plaintiff has therefore been deprived of its property without compensation and without due process of law, in violaton of the Constitution of this State and the Fourteenth Amendment to the Constitution of the United States.

It is the insistence of the plaintiff that the defendant destroyed a warehouse belonging to the plaintiff when the defendant widened Broad street in the City of Chattanooga; that this warehouse had been built by the plaintiff on land leased from the Nashville, Chattanooga and St. Louis Railway Company; that the City of Chattanooga had entered condemnation proceedings against the Nashville, Chattanooga and St. Louis Railway Company but in said condemnation proceedings the plaintiff was not made a party. The material facts submitted to the trial judge as found in the record are as follows:

The warehouse and platform involved were built in 1921 on land owned by the State of Georgia and held under lease by the N. C. & St. L. Railway for a term of fifty years from December 27, 1919. The contract for the lease of the premises was between plaintiff and the N. C. & St. L. Railway. The original lease was not introduced in evidence. The original lease was superseded by a new lease executed September 5, 1923 for one (1) year.

This lease was extended by mutual consent to September 5, 1925. On September 1, 1925 this same lease was extended by mutual consent from month to month instead of for another year.

The lease contract executed September 5, 1923 was subject to the provisions of the Amended Uniform contract for express operations over rail lines, dated July 18, 1922. Section 4 of said Uniform contract provides as follows:

"In cases where it is agreed with the Rail Company that the Express Company itself shall erect a separate or distinct station or terminal building on the Rail Company's property, the Rail Company agrees that it will lease to the Express Company at a rental of six per centum per annum of the appraised value of the land (plus taxes) with a minumun rental of $5

per annum including taxes, land suitably situated which is not otherwise required for the Rail Company's own purposes; and if the Express Company shall cease to do the express business on the lines of the Rail Company, the Rail Company shall purchase from the Express Company such buildings so erected at cost, less depreciation, at the time of such cessation."

"The Rail Company further agrees that in the event the Express Company shall cease to do express business on the line of the Rail Company, it will then purchase any buildings then owned by the Express Company heretofore erected on the land of the Rail Company at the cost of such building less depreciation at that time."

The lease contract executed September 5, 1923 contained the following:

"This contract shall be subject to and in accordance with the terms, limitations and provisions of the Act of the General Assembly of Georgia, approved November 30, 1915, and the Acts amendatory thereof, providing for the lease of the Western and Atlantic Railroad, and the lease contract entered into between the State of Georgia and the N. C. & St. L. Railway May 11, 1917."

The Lease Act of the State of Georgia referred to in said lease provides:

"The said lessee shall not sublet or release the said Western and Atlantic Railroad, or any part thereof, except such as is not needed for railroad purposes, without the approval in writing of the Governor of the State; Provided, where any property shall be re-leased under this section, it shall be reported to the office of the Railroad commission and a record made thereof, in a book to be kept for that purpose, in order to complete the same. All improvements, betterments or additions to, in or upon said road or any part thereof or any part leased thereunder, made by the lessee or its tenants shall become, upon the expiration of the lease, the property of and belong to the State of Georgia."

The lease contract between plaintiff and the N. C. & St. L. Railway was also subject to the provisions of the lease contract entered into between the State of Georgia and the N. C. & St. L. Railway, May 11, 1917. Section 15 of said contract provides:

"Should, during the term of this lease, any building or other structure now upon the property of the party of the first part included in this lease, or any building or other structure thereafter constructed thereon be damaged or destroyed by fire during the term of this lease, the party of the second part binds and obligates itself to restore such building or structure, within a reasonable time, in substantially as good condition as previous to said damage or destruction."

Section 16 provides:

"It is expressly agreed that should any of the terms or conditions in this contract or lease be found to be inconsistent with any of the terms or provisions of the aforementioned Acts of the General Assembly of Georgia authorizing the making of same, in such event the terms and provisions of the said Act shall govern and control."

The plaintiff was notified by the defendant some three weeks or a month before the building was destroyed, to vacate same, and offered to give the building to its agent and superintendent if they would remove it.

The defendant also served a written notice on plaintiff that it would want possession of the property on May 5, 1926. This notice was served on April 17, 1926, by Ashby Black, assistant city engineer.

The land upon which the building was erected was legally condemned by the defendant.

The jury of view found the value of the property taken, including the buildings, and incidental damages to be $144,000.

This amount was paid by the defendant.

The value of the material in the building was estimated to be $228.61. The cost of wrecking the building was estimated at $192.31.

The defendant inquired of the N. C. & St. L. Railway as to the terms of the leases with its sub-lessees before beginning the condemnation proceedings, and was told by the agent of the railway that none of its tenants had leases extending more than thirty (30) days.

It was agreed that Mr. W. R. Cole, president of the N. C. & St. L. Railway, testified before the jury of view in the condemnation proceedings as follows:

"For instance, in my discussion of the matter I referred to the fact that probable expenditures we would find desirable to make would almost double the sum. I included in that, for instance, a new express building. We will be entitled to the value of that building, but the building that we will put up on a new location, which is shown on the map, down in that corner, will be a more valuable building by three or four times, than the one you are tearing down here. I included nothing for that, because the value of the building that will be destroyed will be treated by another witness."

The defendant through its commissioner of streets and sewers offered to give the building to anyone who would remove it.

The plaintiff voluntarily removed from the part of the building condemned by the defendant, and voluntarily turned same over to the city.

The plaintiff insists that it is not concerned with any question of right of removal of the building but is concerned with the right to be compensated for improvements affixed to the land; and in support of its contention relies upon Corpus Juris 36, page 183:

> "It is common to insert in leases a provision that the landlord shall upon the termination of the lease pay for all improvements made by the tenant, and such provisions complying with the general rules of law as to the validity of contracts are binding on the leasor. The landlord may assume liability for compensation for improvements by the tenant regardless of his ownership of the property leased."

The leasehold interest of the Railway Company in the land on which this building stood was clearly sufficient to bring this within the scope and purview of the clause of the operating agreement binding the Railway Company to compensate the Express Company for buildings placed on the "property" or "land" of the Railway Company.

Sec. 63 of Shannon's Annotated Code provides:

> "The word 'property' includes both personal and real property; the words 'personal property' include money, goods, chattels, things in action and evidences of debt; 'real estate,' 'real property,' 'lands,' include lands, tenements, and hereditaments, and all rights thereto and interest therein, equitable as well as legal."

This is in accord with the well settled general rule laid down in 32 Cyc., 649, as follows:

> "As regards realty the term 'property' includes every right, title, estate or interest therein, whether legal or equitable, perfect or imperfect, inchoate or complete, and rights which lie in contract, whether executory or executive."

On pages 657, 658, the same authority states:

> "The meaning and application of the word 'land' is in some cases defined by statute, and its meaning in particular cases frequently depends upon the proper construction of a deed, will or other instrument or of a constitutional or statutory provision, in which it may be used in a sense more restricted, or on the other hand, more comprehensive than its proper technical signification. So while the use may be technically inaccurate, the term 'land' as so used or defined may include any estate or interest in lands, either legal or equitable, and easements, incorporeal hereditaments, and chattel interests such as a leasehold interest or estate for years."

The plaintiff's contention reduced to its final analysis may be expressed as follows:

The plaintiff is entitled to recover the value of the buildings sued for because,

"(1)   The Express Company owned, as a part of its lease-hold interest in the premises, the right to be compensated for the value of the building erected by it and destroyed by the defendant· city.

"(2)   As lessee, the Express Company was a necessary party to the condemnation proceedings if the city desired to condemn its interest in the premises."

It will be noted from the above quotations from plaintiff's brief that it bases its right of recovery in this case upon its leasehold interest in the building condemned by the city. It is, therefore, necessary to look to the contract under which plaintiff occupied this building at the time the city condemned and took possession of same. The lease and contract under which plaintiff occupied this building from September 1, 1923 up to the time it was removed by defendant is filed as Exhibit "A." This lease executed September 5, 1923 for the term beginning September 1, 1923 and ending September 1, 1924, which appears to have been extended to September 1, 1925, was subject to the provisions of the Amended Uniform Contract for express operations over rail lines dated July 18, 1922. It was also subject to, and in accordance with the terms, limitations and provisions of the Act of the General Assembly of Georgia, approved November 30, 1915, and the Acts amendatory thereof, providing for the lease of the Western & Atlantic Railroad and the lease contract entered into between the State of Georgia and the N. C. & St. L. Railway May 11, 1917.

This lease was superseded by a new contract executed September 1, 1925, under the terms of which plaintiff was occupying the building at the time it was condemned and taken by the defendant. This contract is filed as a part of Exhibit "A" to the testimony of Mr. W. M. Matthews, and provides:

"By agreement of the parties hereto, the attached lease made by the N. C. & St. L. Railway to the American Railway Express Company for the year ending September 1, 1924, and extended by mutual consent to September 1, 1924  .  .  .  is hereby extended from month to month instead of for another year, but subject in all respects to the provisions of said lease, the monthly rental being the same."

"The Express Company agrees to vacate said premises and yield possession upon thirty days written notice, in the event the City of Chattanooga acquires the right to extend Broad street through the same."

It will be noted from this last contract that plaintiff failed to obtain a new lease for this building when its lease expired on September 1, 1925. The record shows that prior to September 1, 1925 negotiations had been carried on between the railway and defendant with the view of the defendant extending Broad street

through this property. In view of these negotiations the railway rented this building to the plaintiff from month to month with an express agreement that plaintiff would vacate the premises and yield possession upon thirty days written notice. The record and the contract under which plaintiff occupied this building clearly shows that its lease expired on September 1, 1925, and that it was simply a tenant from month to month, and that it had no leasehold estate or interest in the building at the time it was condemned and taken by the defendant. This property was condemned by the defendant on December 2, 1925, and the building removed some time after May 6, 1926. At the time the building was removed it had been voluntarily vacated by plaintiff, and had been the property of the city for more than five months.

"An estate or interest must be an existing one, and a lessee whose term has expired when the taking is made has no interest in the property for the deprivation of which he is entitled to damages." 1 Nichols on Eminent Domain, 341.

"Where, in proceedings to condemn the rights of owners fronting or shutting on a city street. . . . it appears that the plaintiff never had more than a leasehold interest, which had expired before the petition of the appointment of commissioners was filed, plaintiff has no estate to be condemned or taken." Putney Bros. v. Milwaukee L. H. & T. Co., 134 Wis., 379.

It will thus be seen that plaintiff's lease having expired on September 1, 1925, before the condemnation proceedings and before the taking of the building by the defendant, plaintiff had no interest or estate in same, and was not a necessary party to the condemnation proceedings. From and after September 1, 1925, plaintiff was simply a tenant from month to month, and as such had no interest for which it was entitled to compensation.

Section 11a of the Act of the General Assembly of Georgia, approved November 30, 1915, as amended by the Act approved August, 1916, the provisions of which the contract under which plaintiff occupied said building was subject to, provides:

"The said lessee shall not sub-let or release the said Western & Atlantic Railroad or any part thereof, except such as is not needed for railroad purposes, without the approval in writing of the Governor of the State; Provided, where any property shall be re-leased under this section it shall be reported to the office of the railroad commission and a record made thereof in a book to be kept for that purpose in order to complete the same. All improvements, betterments or additions to, in or upon the said road or any part thereof or any part leased thereunder, made by the lessee or its tenants shall become, upon the expiration of the lease, the property of and belong to the State of Georgia."

Under the provisions of the above Act, which was a part of the plaintiff's lease contract, it is expressly provided that this building should become the property of the State of Georgia upon the expiration of its lease with the N. C. & St. L. Railway. It is expressly provided that any building erected on said property should not be removed by the N. C. & St. L. Railway or any of its tenants.

"Compensations for buildings erected by a tenant cannot be allowed to him on condemnation of the entire property, if he has covenanted to leave them on the land at the expiration of the term, although the term had just begun and had many years to run." Carrigan v. Chicago, 144 Ill., 537; 21 L. R. A., 212.

In the above case the lease provided that the buildings and improvements were to become the property of the lessors upon the termination of the lease, just as is provided in the lease contract and the Act of the General Assembly of Georgia. The court in discussing this case said:

"The buildings on the lots at the time of filing the petition for condemnation had been erected by the tenants severally, under their leases, and, as we have seen, were to be delivered to the landlords at the expiration of the leases. . . . The buildings so erected would under the lease become fixtures, . . . It is manifest that the right of the tenants in respect of such buildings consisted only in their use and enjoyment during their respective terms, and that all their right and interest therein ceased at the expiration of the term. The landlord took a present estate in such buildings and improvements, subject to the user by the tenants during the term. It was error therefore to instruct the jury that the tenants, as compensation for their leasehold estates in the land, were entitled to the value of the buildings placed thereon. . . . It is clear, we think, that the true measure of the compensation, as their rights and interest are defined and fixed by the leases, was the value of their respective leasehold estates, in their condition at the time of the filing of the petition for condemnation, including the use and enjoyment of the buildings and ground, and deducting, in the McCarty case, the value of the use of the premises not taken, and—in the Brinkworth case, estimating the value subject to the rents reserved, as before indicated."

"Certain premises were leased, the lessee covenanting to erect a building on the land and the lessor agreeing to either pay for it at the end of the term or renew the lease, the building at the end of the renewal term to belong to the lessor. Held, that the title to the building erected vested at once in the lessor, though subject to all the lessee's rights under the lease." Bass v. Metropolitan Westside R. Co., 82 Fed., 857.

It appears that the jury of view, after hearing the evidence and examining the premises in the condemnation proceedings, fixed the value of the land, buildings thereon, which were condemned, as follows:

"After a full and due examination of the premises and improvements thereon, and the hearing of testimony in regard thereto, we assess the damages as follows:

"We find the reasonable value of the property taken and hereinbefore described, including the buildings and incidental damages to be $144,000.

"We therefore report the sum of $144,000 to be paid by the City of Chattanooga, Tennessee, to the State of Georgia and the Nashville, Chattanooga & St. Louis Railway in full of compensation and damages assessed by reason of the taking of said strip of land."

"This the 2nd day of December, A. D. 1925."

"Signatures of the Jury of View."

The record shows that the N. C. & St. L. Railway accepted the amount fixed by the Jury of View for its portion without an appeal, and that the State of Georgia appealed to the circuit court of Hamilton county where the report of the Jury of View was affirmed, and then appealed to the Court of Appeals at Knoxville, where the judgment as to the $144,000 for the property taken was affirmed.

Evidently from the evidence of Mr. W. R. Cole, president of the Nashville, Chattanooga and St. Louis Railroad, the Railway Company, believed that the building was the property of the State of Georgia.

We are of the opinion that under the contract between the Express Company and the lessor, the building was the property of the State of Georgia and the lease to the plaintiff, having expired September 1, 1925, before the property was condemned by the defendant, the plaintiff was occupying the building as a tenant from month to month.

We are of the opinion that the plaintiff did not own the building sued for and it had no leasehold interest in the building for which it is entitled to compensation. Whatever, if any, rights the plaintiff would have under its contract with the Nashville, Chattanooga and St. Louis Railway Company, that is not before the court in the present case. The plaintiff is suing the defendant in an action for damages for a tort and we are of the opinion that the court correctly decided this case according to the evidence and the law applicable thereto. The assignment of error is overruled, the judgment of the lower court is affirmed. The plaintiff will pay the costs of the cause including the appeal for which execution will issue.

Heiskell and Senter, JJ., concur.